IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


ALAN R. BACKLUND,
    Plaintiff,

v.                                No:  5:06cv245/MCR/MD

MICHAEL J. ASTRUE,
Commissioner of Social Security,
    Defendant.

_____

## REPORT AND RECOMMENDATION

    This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) terminating plaintiff's previously approved disability benefits on the basis of medical improvement related to his ability to work.

    Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

In October 1998 plaintiff applied for disability insurance benefits. His application was denied initially and on reconsideration. He requested a hearing before an Administrative Law Judge (ALJ). However, on November 29, 1999, after reviewing the evidence and without a hearing, the ALJ found that plaintiff was disabled and entered a fully favorable ruling (tr. 123-132).

Five years later, after a continuing disability review, the Commissioner determined that plaintiff was no longer disabled as of October 1, 2004 and terminated benefits effective December 31, 2004. Plaintiff again requested a hearing before an ALJ. Plaintiff appeared, with counsel, at a scheduled hearing before a new ALJ on October 5, 2005, and was informed that the ALJ had "decided to reopen [the November 1999] decision based on multiple errors of law," and that because reopening the earlier decision would change the standard of review, the hearing would be rescheduled (tr. 398-90). A hearing was held on December 1, 2005 at which plaintiff was represented by counsel and testified. A vocational expert also testified. Before taking testimony the ALJ announced that he had "in fact, reopened Judge Russell's decision" because it was "flawed with legal error" and that "[d]ecisions that suffer from legal defects may be reopened at any time." (Tr. 319). Plaintiff's counsel objected, arguing that the earlier decision could not be reopened because it fell outside the four year period from the date of the earlier decision. The objection was overruled (tr. 320). The ALJ issued an unfavorable decision on January 20, 2006, confirming that plaintiff's disability had ceased (tr. 19-26) and the Appeals Council declined review (tr. 9-11), making the ALJ's January 20, 2006 decision the final decision of the Commissioner, and therefore subject to review in this court. *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998). This appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that plaintiff had been determined to be disabled beginning March 1, 1998 and that he had not engaged in substantial activity since that time; that plaintiff had a severe condition of mild rheumatoid arthritis, but did not have an impairment that met or equaled the impairments listed in Appendix 1, Subpart P, Regulations No. 4; that there had been medical improvement related to plaintiff's ability to work since his earlier determination of disability; that plaintiff's allegations concerning his limitations were not totally credible; that plaintiff had the residual functional capacity to perform medium work but was illiterate; that his past relevant work did not require the performance of work-related activities precluded by his residual functional capacity; and that plaintiff was not disabled as defined in the Act.

## STANDARD OF REVIEW

In this case the issue before the ALJ was whether a finding of disability, previously made, should be terminated.  The ALJ's decision to terminate will be reversed only if it is not supported by substantial evidence.  *Falge, supra*.  The court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether it is premised upon correct legal principles. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983).  In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision.  *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).  "Substantial evidence is more than a scintilla, but less than a preponderance.

It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1594(f), the Commissioner determines whether a disability continues or ends in eight steps. A finding of disability or no disability at any step renders further evaluation unnecessary. The steps are:

a. Is the individual currently engaged in substantial gainful activity?

b. If not, does the individual have an impairment or combination of impairments which meet or equal the severity of any of the impairments listed in App. 1, Subpt. P, Regulation. No. 4?

c. If not, has there been a medical improvement in the individual's condition?

d. If so, is the medical improvement related to the ability to work?

e. If there has been no medical improvement, or if there was improvement but it was not related to the ability to work, do the exceptions in 20 C.F.R. § 404.1594(d) or (e) apply? These exceptions are: (d) the condition has been made non-disabling because of advances in medical or vocational techniques, or new diagnostic tests show that the condition is not disabling although it was formerly thought to be, and (e) the first finding of disabled was fraudulently obtained, or the claimant has disappeared or is uncooperative, or fails to follow prescribed treatment.

*Case No: 5:06cv245/MCR/MD*

>   f.  If the medical improvement is related to ability to work, or if the one of the exceptions in § 404.1594(d) applies, is the current condition severe?
>
>   g.  If not, there is no disability. If so, do the individual's impairments prevent the performance of past relevant work?
>
>   h.  If so, is the individual able to perform any other work?

"In a case in which benefits have been terminated, as in a case in which benefits have been denied, the burden of proving disability is on the claimant, not on the [Commissioner]." *Crosby v. Schweiker*, 650 F.2d 777, 778 (5th Cir. Unit A 1981) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)).[1] If the evidence is substantially the same as the evidence had been in the initial disability benefits request case, benefits must be continued. *Simpson v. Schweiker*, 691 F.2d 966, 969 (11th Cir. 1982). If the claimant establishes disability, the burden shifts to the Commissioner at step 8 to show the existence of other jobs in the national economy which, given the claimant's impairments, he can perform. *Chester v. Bowen*, 792 F.2d at 131; *MacGregor v. Bowen*, 786 F.2d 1050, 1052, (11th Cir. 1986). If the Commissioner carries this burden, claimant must prove that he cannot perform the work suggested by the Commissioner. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). A court reviewing an administrative determination in a benefits continuation case must, "in light of principles of administrative res judicata, . . . ascertain whether the [Commissioner's] finding of improvement to the point of no disability is supported by substantial evidence." *Simpson*, 691 F.2d at 969.

---

[1] **Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit.** *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

*Case No: 5:06cv245/MCR/MD*

## PLAINTIFF'S MEDICAL HISTORY

On May 5, 1998 plaintiff was seen by Christopher Robinson, M.D., an orthopedic surgeon, with complaints of multiple joint pain and weakness, especially in the knees, but also in the elbows and hands. His physical examination was essentially normal, with no swelling, joint line tenderness or instability in the knees There was normal range of motion and x-rays were unremarkable. Dr. Robinson suspected rheumatoid arthritis and ordered a rheumatoid profile and referral to a rheumatologist (tr. 73-74). The profile showed "POSITIVE results with the undiluted specimen and negative results with the 1-10 diluted specimen," which indicated "very low levels of Rheumatoid Factor present in a variety of disease states other than Rheumatoid Arthritis." (Tr. 75).

Two months later, on June 29, 1998 plaintiff was seen by Parks W. Pratt, M.D., a rheumatologist. Dr. Pratt noted "slide-screen rheumatoid factor positivity" with symmetric diffuse inflammatory polyarthritis and mild swelling with moderate stiffness. Physical examination revealed mild synovial thickening in the wrists and to a lesser degree in the fingers, elbows and ankles. There was trace swelling in the knees, and "very mild" tenderness in all these areas (Tr. 91-92). Dr. Pratt suspected rheumatoid arthritis, and ordered further tests.

Plaintiff returned to Dr. Pratt on July 13, 1998, reporting continued difficulties with swelling, tenderness and stiffness in the hands. Blood tests had been essentially normal, and "the rheumatoid factor on this occasion was negative." (Tr. 86). On physical examination there was mild synovial thickening in the wrists and fingers and minimal restriction in movement. Other joints showed mild or minimal discomfort and essentially full range of motion. Dr. Pratt's assessment was inflammatory polyarthritis "most consistent" with mild rheumatoid arthritis. Plaintiff was started on Sulfasalazine. Dr. Pratt also opined that plaintiff's symptoms were consistent with marked difficulties in his job as a carpenter and construction worker

(tr. 86-87). Plaintiff returned to Dr. Pratt on September 11, 1998, basically unchanged. On December 18, 1998 he was "getting a little better" but still had substantial symptomatology. Swelling seemed slightly improved, and Dr. Pratt described plaintiff's improvement as "subtle." (Tr. 79). He also noted that plaintiff had applied for disability, and felt that he was an "appropriate candidate." (*Id.*).

On March 19, 1999 Dr. Pratt noted that plaintiff was "doing relatively well," but that the use of tools that involved vibration or shock waves, such as hammers, was extremely difficult to tolerate (tr. 273). On physical examination there was still significant synovial thickening and mild to moderate tenderness at the wrists. Otherwise plaintiff was not significantly different from before, and Dr. Pratt felt that plaintiff had "done a little better" with medication. (*Id.*). Plaintiff returned on May 19, 1999, and Dr. Pratt noted that there had been "a little further improvement." Physical examination disclosed more tenderness in the heels, otherwise unchanged. Plaintiff was continued on Sulfasalazine, and told to return in 3 to 4 months and continue his labs every 12 weeks (tr. 269).

Plaintiff did not return in 3 to 4 months, nor did he continue his labs every 12 weeks. Instead he did nothing for just over six years, when, after having been notified that his benefits had been terminated, he waited another eight months, and then returned, once, to Dr. Pratt. Dr. Pratt noted that plaintiff was returning after a five year (actually six year) absence because plaintiff had difficulties with the "Disability System." (Tr. 304). Plaintiff said he was not "believed" because he had so little treatment, which he attributed to the expense of medicines and labs (*id.*). Dr Pratt noted that plaintiff had never had "severe, dramatic synovitis," only mild to moderate inflammation, which limited his ability to perform in the workplace, particularly in construction using impact tools and vibrating tools (*id.*). Dr. Pratt also felt that because plaintiff was illiterate, his employment opportunities outside construction work were extremely limited. On physical examination he recorded

"mild but definite" tenderness and/or swelling at multiple finger, wrist, heel and toe joints, but no limitations or deformity. All other areas were normal (tr. 305). Dr. Pratt opined that plaintiff was "likely an appropriate disability candidate" (tr. 304), particularly in the construction trade, and he prescribed Plaquenil. There is no other record from Dr. Pratt.

Before his benefits were terminated, plaintiff was referred to Muhammad Naeem, M.D., a board certified internist, who conducted a consultative examination on September 1, 2004. Plaintiff gave a history of disability due to rheumatoid arthritis, with symptoms including a feeling of vibration and numb hands as well as pain in his low back, knees and hands. He did not feel he could do any work, and reported that he had been treated by Dr. Pratt, but that this did not help him much. Dr. Naeem reviewed Dr. Pratt's records from 1998 and 1999, and noted that plaintiff was diagnosed with inflammatory polyarthritis consistent with mild rheumatoid arthritis, and that he was expected to show significant rheumatoid synovitis. Plaintiff reported that he was using no medication other than over-the-counter medication for pain. On physical examination, plaintiff's back was normal, with no spasm or tenderness, there was no swelling or deformities in his hands, range of motion in all body joints was full, his gait was normal, and he was able to walk, sit, stand, climb up and get down from the examination table without difficulty. Dr. Naeem's assessment was that plaintiff currently did not have any obvious clinical stigmata of joint disturbances, that he would be unable to do the type of work he had done before, but that he should be able to perform jobs that do not require too frequent movement or heavy lifting (Tr. 283-85).

## DISCUSSION

The plaintiff argues that the ALJ erred in addressing the November 29, 1999 ALJ decision granting benefits ("prior decision"), in finding that there had been

medical improvement related to the ability to work, in finding that plaintiff could do his past relevant work and other work available in the national economy. Plaintiff argues that he was therefore disabled from his onset date as a matter of law. The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained. The issue thus presented is whether the ALJ's decision that the plaintiff was not disabled, in light of his physical condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

1. <u>Reopening prior decision.</u>

Plaintiff first contends, in the alternative, that the ALJ improperly considered and criticized the prior decision without reopening it, or that the ALJ reopened the prior decision improperly. The plaintiff's alternative contentions are understandable given the current ALJ's handling of the matter. As noted above, the ALJ announced that he was reopening the prior decision based on legal error. However, in the written decision now under consideration ("current decision"), the ALJ did not reopen the prior decision.

In his summary of the medical evidence, the ALJ discussed the prior decision in some detail, noting that the prior ALJ issued his decision without holding a hearing, basing the prior decision solely on the records of Dr. Pratt. He noted that he felt this was error, because the prior ALJ did not consult a vocational expert as required, and because Dr. Pratt's 1998 clinical findings were "mild" (tr. 21). The ALJ then stated that he had "ample evidence to re-open [the] prior determination based on legal error, however, the end result in this case would be the same . . . ." (*Id*.). Although inartfully worded, it is clear that the ALJ did not reopen the prior decision, because he based his decision on his finding that the plaintiff had made medical improvement related to his ability to work since the prior decision. If the ALJ had reopened the prior decision, medical improvement would have been irrelevant

Case No: 5:06cv245/MCR/MD

because by reopening, the ALJ would have made a decision all the way back to 1998. Consequently, there was no error in reopening because the prior decision was not reopened.

   2.   <u>**Medical improvement.**</u>

The real question presented here is whether the ALJ erred in finding that there had been medical improvement since the prior decision.  The ALJ found improvement based on (1) plaintiff's failure to seek treatment for 6 ½ years, (2) plaintiff's failure to take any medication or have tests done during the entire period, (3) Dr. Pratt's current findings were that plaintiff's condition was mild, and (4) Dr. Naeem's finding that there were no clinical stigmata of joint disturbance.

Plaintiff contends that none of these reasons were supported by substantial record evidence, but the undersigned disagrees.   Failure to seek treatment can be used as a basis for discounting subjective complaints of pain.  *Watson v. Heckler*, 738 F.2d 1169 (11th Cir. 1984).  The reason plaintiff gave for not seeing his doctor for more than six years, and for not taking any prescribed medication or having tests done was not, as his counsel urges, because of the expense.  Plaintiff told the ALJ that he was "saving the taxpayers money" because the doctors could not cure him (tr. 331).  The passage of that amount of time without treatment is a very strong indication that plaintiff's condition had improved.  Moreover, the ALJ's finding that plaintiff's current condition was mild supports his conclusion, as does Dr. Naeem's report that plaintiff's condition was essentially normal.  It is true that Dr. Pratt's findings and opinion had not changed from 1998, but that does not mean that there had not been improvement, only that the ALJ discounted Dr. Pratt's opinion that plaintiff's condition had not improved.  There was substantial record evidence to support the ALJ's finding.

3.   **Past relevant work.**

Plaintiff next contends that the ALJ erred in finding that plaintiff could do his past relevant work and in failing to include plaintiff's illiteracy in his hypothetical concerning other jobs. This contention is without merit. The ALJ's finding that plaintiff could do his past relevant work was consistent with Dr. Naeem's opinion that plaintiff could work so long as he was not required to make frequent movements or do heavy lifting. The ALJ asked the vocational expert to assume restrictions consistent with his eventual finding, and the vocational expert opined that plaintiff could do his past relevant work. The ALJ's finding that plaintiff could do other work may have been erroneous because the read/write requirement for those jobs was not excepted out. However, the court need not consider that argument, because it finds that there was no error in the ALJ's determination that plaintiff could do his past relevant work, so the question of whether plaintiff can do other work is irrelevant.

Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be AFFIRMED, that this action be DISMISSED and that the clerk be directed to close the file.

At Pensacola, Florida this 25th day of October, 2007.

/s/ *Miles Davis*
   MILES DAVIS
   UNITED STATES MAGISTRATE JUDGE


**NOTICE TO THE PARTIES**

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).

Case No: 5:06cv245/MCR/MD